UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE HOLMES,

              Plaintiff,

     – *against* –

CITY OF NEW YORK, NEW YORK
POLICE DEPARTMENT, DETECTIVE
RODRIGO CABALLERO, *in his
individual and official capacity*,
SERGEANT MARLON MING, *in his
individual and official capacity*, CITY OF
KENNER (LOUISIANA), OFFICER
CHARLES DONOVAN, *in his individual
and official capacity*, APPLE, INC.,
AMAZON.COM, INC., CHECKPOINT
FLUIDIC SYSTEMS INTERNATIONAL,
LTD., *also known as CheckPoint Pumps
and Systems*, RUSTY MAHONY, *in his
individual and official capacity*, FEDEX
CORPORATION, *and* KENNETH
MEYER, *in his individual and official
capacity*,

              Defendants.

**OPINION & ORDER**

19 Civ. 1628 (ER)

RAMOS, D.J.:

      Tyrone Holmes, proceeding *pro se*, commenced this action on February 21, 2019

against the City of New York (the "City"), the New York Police Department (the

"NYPD"), and New York police officers Detective Rodrigo Caballero and Sergeant

Marlon Ming, in their individual and official capacities (the "City Defendants"); the City

of Kenner, Louisiana ("Kenner"), and Officer Charles Donovan of the Kenner Police

Department, in his individual and official capacity (together, the "Kenner Defendants");

Apple, Inc. ("Apple"); Amazon.com, Inc. ("Amazon"); CheckPoint Fluidic Systems

International, Ltd. ("CheckPoint") and its employee, Rusty Mahony, in his individual and

official capacity (together, the "CheckPoint Defendants"); and Federal Express

Corporation ("FedEx") and its employee, Kenneth Meyer, in his individual and official capacity (the "FedEx Defendants"). Docs. 1, 87. Before the Court are motions to dismiss submitted by each group of defendants, Holmes's cross-motion for summary judgment, and several motions for sanctions against Holmes. Docs. 66, 68, 71, 73, 75, 80, 102.

For the reasons stated below, the defendants' motions to dismiss are GRANTED with prejudice, and the motions for summary judgment and sanctions are DISMISSED.

## I. BACKGROUND

### A. Factual Background[1]

The facts alleged in this case are nearly identical to those Holmes posited in his previously filed action against many of the same parties, *Holmes v. Apple*, No. 17 Civ. 4557 (ER) ("*Holmes I*"). The Court assumes familiarity with its prior opinion in that case, 2018 WL 3542856 (S.D.N.Y. July 23, 2018), but will nevertheless restate the pertinent facts, as well as a brief summary of the proceedings in *Holmes I*.

#### 1. The Operative Complaint

The story begins mundanely enough: On June 22, 2016, Holmes purchased an Apple MacBook Pro from Amazon.com, as well as an AppleCare warranty. Doc. 87 at 5. A computer[2] was packaged for delivery at Amazon's fulfillment center in Lewisberry, Pennsylvania, and delivered to Holmes on June 23, 2016. *Id.* That same day, Holmes gave the computer to his wife, Stephanie Scott, who registered for the AppleCare Protection Plan under her own name and began using the computer.

---

[1] The following facts are drawn from allegations contained in the Amended Complaint, Doc. 87, which the Court accepts as true for purposes of the instant motions to dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also draws facts from the exhibits to the Amended Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Moreover, when a *pro se* plaintiff's opposition memoranda raises new allegations that are "consistent with the allegations contained in the Complaint, they may be read as supplements to the pleadings." *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

[2] The complaint provides two serial numbers for the computer: **C02RQ1T3G8WN** and **C02RQIT3G8WN**, which the Court assumes to be the result of a typographical error. Doc. 87 at 3–5.

Meanwhile, CheckPoint had purchased a similar laptop from Amazon on June 2, 2016, which it received on or around June 7, 2016.  *Id.* at 3.  When it received the computer, CheckPoint installed Kaseya security software (or "spyware," as Holmes calls it) and then mailed the computer via FedEx to an address in Dubai.  *Id.* at 3–4; Doc. 87, Ex. 1 at 4.  Holmes alleges that FedEx then delivered the CheckPoint computer to an Amazon fulfillment center in Pennsylvania on or about June 7, 2016.  Doc. 87 at 3–4.

On August 2, 2016, FedEx received a report from Defendant Rusty Mahony, an employee at CheckPoint, alerting it that the CheckPoint computer had been stolen in transit to its intended destination.  *Id.* at 5.  It had last been scanned on June 7, 2016 at the FedEx location in Kenner, Louisiana.  Doc. 87, Ex. 1 at 4.  Defendant Kenneth Meyer, a FedEx employee, reported the lost computer to Defendant Officer Charles Donovan of the Kenner Police Department.  Doc. 87 at 5.  On August 7, 2016, Donovan took the police report, attached as Exhibit 1 to Holmes's complaint, where he noted that Mahony had been able to access the computer each time the suspected user logged onto the internet and had tracked the computer to New York.[3]  Doc. 87, Ex. 1 at 4.  Because of this access, Donovan wrote, Mahony had been able to identify Scott as the user and to download several of her personal documents, including her W-9 tax form, her passport, her debit card, and a photograph.  *Id.*  Mahony was also able to download a photograph of Holmes's driver's license.  *Id.*  Donovan also noted that Meyer had been in contact with the New York Police Department, who had informed him that it would assist in the investigation if it had an "item number from a law enforcement agency from where the theft occurred."  *Id.*  Donovan then had the computer logged as stolen and suspended the case.  *Id.* at 5.  Holmes alleges that this was a "false report," and that "FedEx conspired with CheckPoint and fraudulently filed the report knowing that they had delivered the

---

[3] The computer was also used in Orlando, Florida on July 31, 2016.  Doc. 87, Ex. 1 at 4.

computer that they picked up from [C]heck[P]oint on June 7, 2016 to Amazon at an Amazon Fulfillment Center in Pennsylvania." Doc. 87 at 5–6.

Defendant Detective Rodrigo Caballero and others of the NYPD first attempted to contact Holmes about the allegedly stolen computer on or around September 8, 2016. Doc. 87 at 6. Holmes was not home, but they spoke to several neighbors. *Id.* On September 9, 2016, Caballero called Holmes and advised him that he believed Holmes was "in possession of a 'stolen' laptop that 'belonged to the Department of Defense.'" *Id.* According to Holmes, he was threatened with four years of imprisonment if he did not surrender the laptop. *Id.* The NYPD contacted Holmes every day through early October 2016 with the same threats. *Id.* at 7. He was never served with a search warrant or with a warrant for his arrest. *Id.*

During this time, Caballero was also in contact with Holmes's attorney, Jeff Garfin. On September 21, 2016, Caballero advised Garfin that he would be proceeding with Holmes's arrest and that Holmes should surrender the following day. *Id.* Earlier in the month, Garfin had received a letter from CheckPoint, stating that CheckPoint had tracked the computer and knew that it was in Holmes's possession. The letter, which is attached as Exhibit 2 to Holmes's complaint, states, that if the computer "is returned immediately, in its original condition complete with all original parts and pieces, we will not move further to pursue legal action. [CheckPoint] ha[s] no knowledge or interest in identifying your client or learning further about the details, which put him in possession of our equipment." Doc. 87, Ex. 2. In the same letter, CheckPoint advised Garfin that the matter should be resolved through Caballero and that there was no reason for Mr. Holmes "to have any knowledge of our organization or its employees." *Id.* Based on this letter, Holmes concludes that the NYPD "acted as a security force under color of state law for a private company." Doc. 87 at 8.

Holmes then hired a private investigator to track down the computer he had given his wife.[4] The computer was eventually recovered.[5] According to Holmes, he "has been trying to piece his life back together and discover what exactly happened" ever since and has been "diagnosed with post traumatic stress disorder as a result of the episode, has lost nearly all of his business contacts, and is viewed as some sort of criminal by his friends and neighbors." *Id.*

2. *Holmes I*

According to Holmes, he filed his first lawsuit, *Holmes I*, in June 2017, "as it appeared to be the only way to get answers as to why his life had been completely dismantled by these companies." *Id.* at 8–9. There, he also sued Apple, Amazon.com, LLC, and CheckPoint (but not Mahony), bringing claims for breach of contract, breach of express warranty, breach of implied warranty of merchantability, negligence, strict liability, fraudulent concealment, fraud in the inducement and misrepresentation, and false advertising and unfair business practices. *Holmes I*, 2018 WL 3542856, at *3. Defendants all moved to dismiss the complaint. CheckPoint moved to dismiss based on lack of personal jurisdiction; Apple moved for judgment on the pleadings or, in the alternative, summary judgment; and Amazon asked the Court to enter judgment against it on the breach of contract claim and to dismiss the remaining claims or, in the alternative, to enter summary judgment in its favor on all claims. *Id.* at *1.

The Court found that it did not have personal jurisdiction over CheckPoint because it had no physical presence in New York and because Holmes had not alleged that CheckPoint's actions amounted to a tortious act, so as to fall within New York's personal jurisdiction statute. *Id.* at *6. It also granted Apple's motion for judgment on

---

[4] The Amended Complaint is silent as to why he had to hire a private investigator to accomplish this; however, as discussed in further detail below, it was established in *Holmes I* that he and his wife were estranged during this episode.

[5] The Amended Complaint is also silent as to how the computer was recovered, by whom, and from whom. Again, as discussed below, these facts were established in *Holmes I*.

the pleadings, finding that: (1) Holmes did not have a contract with Apple for the sale of a new laptop and the AppleCare agreement was irrelevant to the dispute; (2) Holmes failed to state a claim for implied warranty, negligence, and strict liability because CheckPoint, not Apple, had installed the Kaseya software; (3) he did not state his claim for fraud with particularity as required by Federal Rule of Civil Procedure 9(b); and (4) he failed to allege consumer-oriented conduct as required for a claim for false advertising and unfair business practices under New York General Business Law § 349. *Id.* at *7–10. The Court likewise entered judgment for Amazon on three of the claims, granted summary judgment in its favor on four others, and, at its request, entered judgment against it on the breach of contract claim for the price of the laptop. *Id.* at *10–14. At the same time, Holmes moved to add FedEx as a defendant, but the Court denied that request as futile. *Id.* at *14–15.

This Court made several additional findings in *Holmes I* that are pertinent to this case. For example, in granting summary judgment for Amazon, the Court found no genuine issue of material fact as to whether the laptop Amazon delivered to Holmes and the laptop belonging to CheckPoint were, indeed, two separate laptops. *Id.* at *14. Amazon submitted evidence that the CheckPoint laptop was sourced directly from Apple and was packaged for delivery in Breinigsville, Pennsylvania; whereas the laptop Holmes ordered from Amazon was packaged in Lewisberry, Pennsylvania. *Id.* Amazon also submitted evidence that CheckPoint, upon receipt of the laptop, had marked it with a sticker that read "Property of CheckPoint Pumps" and installed the Kaseya software. *Id.* This sticker was still on the laptop when it was retrieved by NYPD. *Id.* Holmes maintained throughout the litigation that the laptop he received from Amazon was new, shrink-wrapped and in its original packaging and did not have a sticker. *Id.* Despite having an opportunity to do so, Holmes offered no factual support for his contention that the two laptops were one and the same.

The Court in *Holmes I* also noted that Holmes and Scott were estranged; that Holmes had to hire a private investigator to locate Scott when he continued receiving calls from Caballero; and that Scott had been keeping the computer in a public storage unit in Chelsea, New York. *Id.*, at *2. According to the complaint in that case, Holmes was not present when the computer was ultimately turned over. *Id.* ("Holmes'[s] counsel met with Caballero and another NYPD officer to go to Scott's residence. After meeting with Caballero, Scott agreed to accompany the group to her storage unit. Scott turned over the laptop on October 4, 2016 at 7:30 p.m. The 'property of CheckPoint Pumps' sticker was still on the underside of the laptop." (internal citations omitted)).

Holmes appealed this Court's decision to the Second Circuit, and on December 9, 2019, while the instant motion was pending, the Court's decision in *Holmes I* was affirmed via summary order. *See Holmes v. Apple, Inc.*, No. 18 Civ. 2492, 2019 WL 6696939 (2d Cir. Dec. 9, 2019). Notably, the Second Circuit affirmed that "Holmes submitted no evidence of any kind to contest that the laptop he received from Amazon and the CheckPoint Laptop were two entirely separate computers." *Id.* at *3. It also remanded the case to the district court to give Amazon the opportunity to move for costs pursuant to Federal Rule of Civil Procedure 68(d), since Holmes had previously rejected an offer of judgment for $2,351.12 and subsequently received a judgment in that amount. *Id.* at *4.

### B. Procedural History

Holmes filed this action on February 21, 2019. Doc. 1. All defendants moved to dismiss the claims against them. Docs. 66, 68, 71, 73, 75, 80. While those motions were pending, Holmes amended his complaint. Doc. 87. The Amended Complaint alleges the following causes of action:

- Breach of contract by Amazon and Apple;
- Invasion of privacy by Amazon, Apple, and CheckPoint;
- Filing a false report by the CheckPoint Defendants;

- Intentional infliction of emotional distress by CheckPoint;
- Wrongful conversion by CheckPoint and the NYPD;
- Deprivation of property without due process by the NYPD;
- Fraud in violation of 18 U.S.C. § 1030 by FedEx, CheckPoint, Apple, and Amazon;
- Civil rights violations pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986 by all defendants[6];
- Violations of the Lanham Act and false advertising by Apple and Amazon;
- Failure to train by the City Defendants; and
- Identity theft caused by CheckPoint's wrongful conversion.

Additionally, Holmes petitions for attorney's fees from the NYPD and Caballero. *Id.* Shortly after Holmes amended his complaint, defendants requested that their previously-filed motions be deemed filed as to the new complaint and supplemented by letters, to the extent necessary. Docs. 88, 89, 92, 93, 96, 99. The Court granted these requests. *See* Doc. 101.

In their motions to dismiss, Apple and Amazon both petition the Court to dismiss the claims against them as barred by res judicata under Federal Rule of Civil Procedure 12(b)(6). In the alternative, Apple and Amazon argue that the complaint fails to state a claim against them. Docs. 72, 74. The CheckPoint Defendants also urge that claims against them are precluded by the Court's decision in *Holmes I* and that this Court should once more dismiss for lack of personal jurisdiction under Rule 12(b)(2). The CheckPoint Defendants maintain that, in the alternative, the complaint should be dismissed as to Mahony under Rules 12(b)(5) and 4(m) for lack of proper service of process.[7] Doc. 79. The Kenner Defendants similarly argue a lack of personal jurisdiction. Doc. 80. Finally, FedEx and the City Defendants move to dismiss the complaint against them for failure to

---

[6] These are the only claims against the Kenner Defendants.

[7] Because the Court finds that it does not have personal jurisdiction over the CheckPoint Defendants, it need not reach this issue.

state a claim under Rule 12(b)(6). Docs. 67, 70. Defendants also seek a variety of sanctions. Apple and CheckPoint petition the Court for a permanent litigation injunction against Holmes; and CheckPoint and Amazon seek attorney's fees.[8]

In opposition, Holmes moves for summary judgment on the breach of contract claims, the conversion claims, and the claim for intentional infliction of emotional distress. Doc. 102.

The Court will consider each of these requests in turn.

## II. MOTIONS TO DISMISS

### A. LEGAL STANDARD

#### 1. *Rule 12(b)(2)*

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). The court construes all of the plaintiff's allegations as true and resolves all doubts in its favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such

---

[8] In both of his opposition briefs, Holmes has failed to address most of the arguments raised in support of these motions. *See* Docs. 94, 102. When arguments are not addressed in opposition, the Court may, in its discretion, consider them waived. *Lipton v. Cty. of Orange, NY*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). Several of the defendants have asked the Court to do just this. However, given Holmes's *pro se* status and the number of simultaneous motions he was tasked with addressing, the Court declines to do so. In the spirit of completeness and so as not to give Holmes the impression that any of his claims may have any merit, the Court will still address each of Holmes's claims in full.

allegations would lack the factual specificity necessary to confer jurisdiction." *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (internal quotation marks and citation omitted). Courts may rely on additional materials outside the pleading when ruling on 12(b)(2) motions. *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint. *See Darby Trading*, 568 F. Supp. 2d at 335.

### 2. *Rule 12(b)(6)*

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Courts should read *pro se* pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation marks omitted) (quoting *McPherson v. Coombe*, 174 F.3d 276,

280 (2d Cir. 1999)).  The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue."  *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

**B.  DISCUSSION**

Defendants all raise a variety of procedural and substantive challenges to Holmes's complaint.  As explained in further detail below, Defendants are almost universally correct.  Holmes's second attempt to bring suit on this set of facts is as doomed as his first.

*1.  Res Judicata:  Apple and Amazon*

Apple and Amazon maintain that all claims against them are barred by res judicata—also referred to as claim preclusion—because Holmes had a full and fair opportunity to litigate any grievance he had against them in *Holmes I*.[9]  Docs. 72, 74.  In response, Holmes argues that these claims are viable because the fraud exception to res judicata is applicable.  Doc. 94 at 11–13.  The Court finds that the fraud exception is not applicable here and that Holmes's claims against these parties are therefore precluded.

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  A defendant

---

[9] In considering a motion to dismiss, a court is permitted to take judicial notice of public records, which include complaints and other documents filed in federal court.  *See Harrison v. Diamonds*, No. 14 Civ. 484 (VEC), 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) (quoting *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 351–52 (E.D.N.Y. 2010)).  When a court takes judicial notice of such documents, it does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  Given that Apple, Amazon, and CheckPoint's motions are predicated on prior litigation in this district, before this very Court, the Court takes judicial notice of documents filed in connection with *Holmes I*.

asserting *res judicata* must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved [the same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (internal quotation marks and citation omitted).

There is no doubt that this Court's decision in *Holmes I* constituted a final decision on the merits with regards to Apple and Amazon. "The archetypal final decision is 'one[] that trigger[s] the entry of judgment.'" *Hall v. Hall*, 138 S. Ct. 1118, 1124 (2018) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009)). The Court entered judgment on the pleadings in favor of Apple on all claims. Similarly, the Court entered judgment on the pleadings in favor of Amazon on three of the claims against it and in favor of Holmes on one of the claims (at Amazon's request), as well as granted summary judgment on the remaining claims. Judgment in *Holmes I* was entered on July 24, 2018. No. 17 Civ. 4557, Doc. 122.

There is also no doubt that the previous action involved both Apple and Amazon,[10] and that the claims asserted in the instant action could have been brought in *Holmes I*. Whether new claims could have been brought in the previous action, "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (internal quotation marks and citation omitted). The question of whether two actions arise from the same transaction or claim is addressed by determining if the "underlying facts are related in time, space, origin, or motivation," the extent to

---

[10] Even though Holmes named Amazon.com, LLC (the "LLC"), rather than Amazon.com, Inc., as the defendant in *Holmes I*, the parties are in privity for res judicata purposes because the LLC is Amazon's wholly-owned subsidiary. 17 Civ. 4557, Doc. 14 ("Amazon.com, LLC is a wholly-owned subsidiary of Amazon.com, Inc."); *see G & T Terminal Packaging Co., Inc. v. Consol. Rail Corp.*, 719 F. Supp. 153, 159 (S.D.N.Y. 1989) ("Subsidiaries are in privity with their principal for res judicata purposes when, as here, they sufficiently represent the principal's interests.").

which "they form a convenient trial unit," and whether such treatment "conforms to the parties' expectations or business understanding or usage." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (internal quotation marks and citations omitted). The claim or cause of action is comprised of the "identity of facts surrounding the occurrence," and not the legal theory used to frame a complaint. *Woods*, 972 F.2d at 39 (citing *Berlitz Sch. of Languages of Am., Inc v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980)).

The claims in the instant action arise from precisely the same allegations in *Holmes I*. Indeed, many of the causes of action, like the breach of contract claims against Apple and Amazon (on which the Court entered judgment *in favor* of Holmes against Amazon), are nearly identical. As this Court has previously noted, "the two cases involve the exact same set of facts and many of the same Defendants." Doc. 64 at 3. The Court sees no reason—and Holmes offers none—as to why any new claims could not have been brought in *Holmes I*.

The only question remaining, then, is whether the fraud exception to res judicata applies. Some courts have held that res judicata does not apply if the previous judgment was procured by collusion or fraud. *See In re Ward*, 423 B.R. 22, 29 (Bankr. E.D.N.Y. 2010) (collecting cases). Any such exception is narrow, and courts in these cases have often drawn a distinction between extrinsic and intrinsic fraud. "Extrinsic fraud involves the parties' opportunity to have a full and fair hearing, while intrinsic fraud . . . involves the underlying issue in the original lawsuit." *Id.* (internal quotation marks and citations omitted). In other words, extrinsic fraud involves the circumstances surrounding the suit (for example, whether the parties fraudulently withheld evidence or committed other procedural violations); and intrinsic fraud involves claims raised and addressed by the underlying suit. Collateral attacks are permitted in judgments obtained in extrinsic, as opposed to intrinsic, fraud. *Id.*; *see also Campbell v. Bank of Am., Nat'l Ass'n*, No. 19 Civ. 11 (VB), 2019 WL 4083078, at *6 (S.D.N.Y. Aug. 29, 2019).

Holmes alleges that Amazon perpetuated a fraud on the court by "claiming that the computer seized from the wife of the Plaintiff was not the same computer that was sold by Amazon to Plaintiff, knowing that this was not true." Doc. 94 at 11. Though styled as a claim of extrinsic fraud, the alleged fraud "concerns the underlying issues in the original lawsuit—i.e. intrinsic fraud." *Campbell*, 2019 WL 4083078, at *6. Indeed, Holmes raised this very issue in his briefing in *Holmes I*. 17 Civ. 4557, Doc. 105 at 5. ("Amazon is also mistaken as to what was said about two computers. There was a computer that I bought. There was a computer that CheckPoint bought. However, the act of buying does not equal the act of delivery, and on that distinction, Amazon's logic falls apart, and their defense collapses."). After considering the evidence presented by both parties, the Court in *Holmes I* found that Holmes had failed to raise an issue of material fact as to whether there was only one computer, as he claimed.[11] *Holmes I*, 2018 WL 3542856, at *14. This reasoning was subsequently upheld by the Second Circuit. *Holmes v. Apple*, 2019 WL 6696939, at *3. Allegations of intrinsic fraud, like the ones Holmes raises, do not affect res judicata.

Even if Holmes were claiming extrinsic fraud, his allegations are insufficient. "A plaintiff seeking to apply the fraud exception to res judicata must allege with particularity what the defendant did to conceal any material information and why it was unable to discover defendant's actions." *Ningbo Prods. Imp. & Exp. Co. v. Eliau*, No. 11 Civ. 650 (PKC), 2011 WL 5142756, at *9 (S.D.N.Y. Oct. 31, 2011) (internal quotation marks and citation omitted). Holmes has not alleged any new information material to his claims that Amazon concealed such evidence, or that Amazon took any other action "affecting [his]

---

[11] Contrary to Holmes's contentions, Apple's briefing in *Holmes I* does not counsel a different result. *See* Doc. 94 at 10. In *Holmes I*, Apple assumed Holmes's allegations to be true for the purposes of a motion to dismiss, as was required. However, Apple has reiterated that it "takes no position on (1) whether one or two laptops are at issue in this case or (2) the precise path any laptop travelled to the storage locker possessed by Mr. Holmes' estranged wife and confiscated by the police." Doc. 72 at 2 n.1.

opportunity to have a full and fair hearing." *Campbell*, 2019 WL 4083078, at *6. The fraud exception is therefore inapplicable in this case.

For the foregoing reasons, the Court finds that all claims against Apple and Amazon are barred by res judicata.[12]

### 2. *Personal Jurisdiction: The CheckPoint and Kenner Defendants*

Both the CheckPoint Defendants and the Kenner Defendants challenge this Court's personal jurisdiction over them.[13] In New York, determining whether there is personal jurisdiction involves a two-step analysis. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243–44 (2d Cir. 2007). First, the Court must determine whether personal jurisdiction is appropriate pursuant to either the State's general jurisdiction statute, New York State Civil Practice Law and Rules ("C.P.L.R.") § 301, or its long arm jurisdiction statute, C.P.L.R. § 302(a). If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process

---

[12] Even if the Court had not reached this conclusion, Holmes's claims against Apple and Amazon would still have failed. There are no facts to suggest that either Apple or Amazon acted under color of state law, and Holmes has failed to state any constitutional violation, both prerequisites to Holmes's civil rights claims, *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Holmes is not a competitor of either company, making the Lanham Act inapplicable, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). Both the invasion of privacy and fraud claims, to the extent these are even relevant, are time-barred, *see* C.P.L.R. § 215(3); 18 U.S.C. § 1030(g). His contract claim against Apple fails for the reasons articulated in *Holmes I*, 2018 WL 3542856, at *7. And, in that case, the Court actually entered judgment *in favor of Holmes* on his contract claim against Amazon, *id.* at *11. Holmes's request for declaratory relief against Apple is equally flawed. A declaration that "Apple is in fact pre-installing spyware on computers it advertises as brand new and sells them through Amazon," Doc. 87 at 25, wholly contradicts Holmes's contention that *CheckPoint* installed the alleged spyware, *id.* at 3.

[13] The CheckPoint Defendants also argue that their claims are barred by res judicata. However, jurisdictional determinations—like the Court's previous dismissal of CheckPoint for lack of personal jurisdiction—are not typically considered decisions on the merits. *See Stengel v. Black*, 486 F. App'x 181, 183 (2d Cir. 2012) (citing Fed. R. Civ. P. 41(b)). This does not mean that the Court's decision with regards to CheckPoint does not have some preclusive effect, just that, as discussed in more detail below, preclusion will be limited to the issues actually decided by the Court, rather than to the claim as a whole. *Stinson v. City Univ. of New York*, No. 19 Civ. 4191 (LLS), 2019 WL 3287958, at *4 (S.D.N.Y. July 19, 2019) ("While a dismissal on jurisdictional grounds has no claim-preclusive [or, res judicata] effect, the doctrine of issue preclusion [or, collateral estoppel] bars relitigation of the specific issues that the prior court decided in reaching its jurisdictional determination.").

Clause of the United States Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010).

    *a.  CheckPoint Defendants*

    In *Holmes I*, the Court found that it did not have personal jurisdiction over the CheckPoint defendants pursuant to either C.P.L.R. §§ 301 or 302. This is still the case here. To the extent Holmes's jurisdictional arguments are the same, he is collaterally estopped from relitigating this issue. The doctrine of collateral estoppel, or issue preclusion, applies when:

> (1) [T]he issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (internal quotation marks and citation omitted). To the extent Holmes's jurisdictional arguments are different, the Court finds none of them availing.

    *i.  C.P.L.R. § 301*

    C.P.L.R § 301, New York's general jurisdiction statute, applies only to corporate defendants who are present in New York "with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 34 (1990) (internal quotation marks and citation omitted). The Court in *Holmes I* held that C.P.L.R. § 301 did not apply because CheckPoint "has no physical presence in New York"; "no agents, officers directors, or employees in New York"; "has never been authorized to conduct business in New York"; and has only made a handful of sales "that contained billing and/or shipping addresses in New York." 2018 WL 3542856, at *5. The Court also found that CheckPoint's website was insufficient to confer general

personal jurisdiction in New York. *Id.* Holmes has provided no new facts or allegations that would upset these findings. As in *Holmes I*, C.P.L.R. § 301 does not apply here.[14]

### ii. C.P.L.R. § 302

Holmes argues that specific personal jurisdiction lies pursuant to C.P.L.R. § 302(a)(3)(ii). *See* Doc. 102 at 3. C.P.L.R. § 302(a)(3)(ii) allows a court to exercise personal jurisdiction over a non-domiciliary defendant who: "commits a tortious act without the state causing injury to person or property within the state . . . [if he] . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" *Mount Whitney Invs., LLP v. Goldman Morgenstern & Partners Consulting, LLC*, No. 15 Civ. 4479 (ER), 2017 WL 1102669, at *4 (S.D.N.Y. Mar. 23, 2017) (quoting C.P.L.R. § 302(a)(1–3)). The same jurisdictional basis was raised—and rejected—in *Holmes I*.

To satisfy the first element, Holmes must "aver facts constituting 'a tort under the law of the pertinent jurisdiction.'" *Bank Brussels Lambert*, 305 F.3d 120, 125 (2d Cir. 2002) (internal quotation marks and citation omitted). "[P]laintiff need not actually prove that defendant committed a tort but rather need only state a colorable cause of action." *Id.* To be colorable, allegations must not be "inherently implausible." *Id.* at 126 n.2; *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 537 (S.D.N.Y. 2018). In this case, Holmes raises the following torts for purposes of with C.P.L.R. § 302(a)(3)(ii): (1) filing a false police report; (2) invasion of privacy; (3) intentional infliction of emotional distress; (4) conversion; (5) identity theft; (6) computer fraud; and (7) civil rights violations. All of these, with the exception of the first, are being raised for the first time in the instant action. The Court finds that they are all inherently implausible.

---

[14] Holmes is under the mistaken impression that because CheckPoint is headquartered in Louisiana, it should be subject to jurisdiction in New York. *See* Doc. 43 at 2–3. Contrary to Holmes's contentions, concerns about personal jurisdiction are not "frivolous statements," *id.* at 2, but rather go to the constitutional limits of this Court's authority. The Court cautions Holmes that CheckPoint's arguments about jurisdiction are not "vituperative, word-gobble rants," as he suggests, *id.*, but rather are correctly reasoned and ultimately persuasive.

- Filing a False Report

Holmes alleges that the CheckPoint Defendants "caused the filing of a false police report claiming that the aforementioned computer had been stolen from Checkpoint by [Holmes] and that [Holmes] and his family were in possession of a stolen computer." Doc. 87 at 13–14. Holmes raised a similar claim in *Holmes I*. There, the Court found that filing a police report—even if the report was inaccurate and even if Holmes's claim were construed as one for malicious prosecution—did not "constitute allegations of a tortious act as required by C.P.L.R. § 302(a)." 2018 WL 3542856, at *6.

The only difference between this complaint and Holmes's previous allegations is that, here, Holmes suggests that CheckPoint may have acted knowingly. *See* Doc. 87 at 5 ("Checkpoint[] fraudulently, falsely, and with malicious intent to deceive the NYPD and others, caused the filing of a false report through its employee, Mahony . . . ."). To the extent Holmes's claim is construed as one for malicious prosecution, "[g]iving information to the police that is known to be false qualifies as the commencement of a prosecution," and may give rise to such a claim. *TADCO Constr. Corp. v. Dormitory Auth. of New York*, 700 F. Supp. 2d 253, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted). However, Holmes's contention that CheckPoint knew the information was "false," is completely belied by this Court's previous findings and by the complaint itself. In *Holmes I*, the Court noted that a CheckPoint employee notified FedEx about the lost computer on June 15, 2016. 2018 WL 3542856, at *1. This *predates* Holmes's purchase of his computer from Amazon on June 22, 2016. Doc. 87 at 5. Moreover, according to Holmes, "CheckPoint had been continuously monitoring the computer through the use of its spyware which it had installed on the computer, since the day the computer was activated on June 23, 2016." *Id*. CheckPoint knew, then, that the computer had not arrived at its intended destination in Dubai. This is corroborated by the police report attached to the complaint. Doc. 87, Ex. 1. Holmes alleges no facts to suggest that he was the intended recipient of the computer, or that CheckPoint had any

reason to believe he was in lawful possession of their computer. Based on the alleged facts taken as true, Holmes's claim simply does not add up.

- Invasion of Privacy

Next, Holmes argues that CheckPoint invaded his privacy by "surveilling" him and his family and by seeking to steal his computer, "thereby depriv[ing] [Holmes] of his work in the computer, and giv[ing] access to others, known only to the defendant, [CheckPoint], of plaintiff's personal information." Doc. 87 at 13. "New York does not recognize a common-law right to privacy." *Edme v. Internet Brands, Inc.*, 968 F. Supp. 2d 519, 527 (E.D.N.Y. 2013) (internal quotation marks and citation omitted). Instead, these claims "are governed by Civil Rights Law Section 50–51, which forbids the use [] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person . . . ." *Ifudu v. City of New York*, No. 16 Civ. 2957 (MKB), 2018 WL 4568799, at *13 (E.D.N.Y. Sept. 24, 2018) (internal quotation marks and citation omitted). This statute clearly does not apply to Holmes, and, in any event, has a one-year statute of limitations, which has long expired. C.P.L.R. § 215(3).

- Intentional Infliction of Emotional Distress

Holmes alleges that CheckPoint intentionally inflicted emotional distress by "filing . . . a false report claiming that Plaintiff had stolen the computer." Doc. 87 at 15. "Claims for intentional infliction of emotional distress are governed by a one-year statute of limitations." *Abdallah v. City of New York*, No. 95 Civ. 9247 (MGC), 2001 WL 262709, at *5 (S.D.N.Y. Mar. 16, 2001). "The limitations period begins to run on the date of the injury." *Semencic v. Cty. of Nassau*, No. 18 Civ. 5244 (SJF) (AKT), 2020 WL 435294, at *8 (E.D.N.Y. Jan. 28, 2020). Here, CheckPoint filed the police report in August of 2016, and the computer was recovered in September or October 2016, but the case was not filed until February 2019. Therefore, claims for intentional infliction of emotional distress are time-barred and "inherently implausible."

- Conversion

Holmes also accuses CheckPoint of wrongful conversion. Under New York law, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–404 (2d Cir. 2006) (internal quotation marks and citation omitted). Per the Court's findings in *Holmes I*, Holmes was not the owner of the CheckPoint computer because this computer and the one he ordered from Amazon were *not* one and the same. *Holmes I*, 2018 WL 3542856, at *14 ("Holmes offers no facts to support the contention that the laptop CheckPoint purchased was delivered to him by Amazon, and he does not refute his earlier statements that the laptop he received from Amazon was new, shrink-wrapped, and had no sticker on it."); *Holmes v. Apple, Inc.*, 2019 WL 6696939, at *3 ("An affidavit from CheckPoint states, and Holmes does not contest, that upon receipt of the CheckPoint Laptop, a CheckPoint employee installed the Kaseya software and affixed to the computer a label reading "Property of CheckPoint Pumps." The label remained on the laptop when the NYPD recovered it. Both before the district court and now on appeal, Holmes appears to acknowledge that the laptop he received from Amazon was shrink-wrapped and unlabeled. Holmes submitted no evidence of any kind to contest that the laptop he received from Amazon and the CheckPoint Laptop were two entirely separate computers."). Because Holmes cannot show that the computer was, in fact, his, his claim for conversion must fail.[15]

---

[15] Holmes's argument that CheckPoint converted intangible property, in other words, "personal information belonging to plaintiff, including, admittedly, the driver[']s license, and likely, the tax returns with social security numbers belonging to Plaintiff and his wife," also fails. Doc. 102 at 11–12. Holmes has not pleaded that he did not still have access to the information at issue. No claim can exist where defendants "possessed only a copy of the [information] and did not, in any way, limit or otherwise deprive [plaintiffs] of possession or use of that [information]." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 536 (S.D.N.Y. 2011).

- Identity Theft

As a result of CheckPoint's wrongful conversion, Holmes maintains that he suffered identity theft based on an alleged attempt to use his Apple ID to sign onto a web browser in Russia. Doc. 87 at 24. Because Holmes's claim for conversion fails, his claim for identity theft must fail as well.

- Computer Fraud

Holmes next suggests that CheckPoint violated Section 1030 of Title 18 of the United States Code—the Computer Fraud and Abuse Act—"by reporting it as stolen . . . to induce the NYPD to seize Plaintiff's computer, knowing that the computer had not been stolen, but delivered two months earlier . . . to the defendant, Amazon . . . as had been required by their contract with FedEx." Doc. 87 at 17. This claim is time-barred.

In part, the Computer Fraud and Abuse Act "criminalizes . . . 'intentionally access[ing] a computer without authorization or exceed[ing] authorized access and thereby obtain[ing] . . . information from any protected computer,' and 'intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." *Sewell v. Bernardin*, 795 F.3d 337, 339–40 (2d Cir. 2015) (quoting 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(5)(C)). It also provides a civil cause of action. 18 U.S.C. § 1030(g). Such a suit must be filed "within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). The statute defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8).

It is unclear at exactly what point Holmes became aware of the pre-installed software on the CheckPoint computer. However, the complaint suggests that he acquired such knowledge—at the latest—between September 12, 2016, when his attorney received a letter from CheckPoint that referenced the software, Doc. 87, Ex. B, and January 17, 2017, when he received a letter from Amazon after "contact[ing] all the actors in this conspiracy to try and resolve the issues without going to court," Doc. 87 at 8. This

lawsuit was not filed until February 21, 2019. Even under the most generous reading of the complaint, then, Holmes's claims for computer fraud are time-barred.

- Civil Rights Violations

Finally, Holmes alleges civil rights violations by the CheckPoint Defendants—as well as all the other defendants—pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986. In particular, he states that:

> The defendants, Meyer, Mahony, FedEx, and Checkpoint, acting in concert with the defendants, New York City Police Department, and Detective Collabra [*sic*], searched, harassed the plaintiff and his wife for a period of several months, after which, it seized plaintiff's computer, which had been equipped with spyware for a period of several months, seized the computer without compensating plaintiff or his wife, and made the computer with his personal information [*sic*] others unknown to plaintiff in violation of Federal law.

Doc. 87 at 19–20. Presumably, Holmes contends that these actions amount to violations of the Fourth and Fifth Amendments to the Constitution. *Id.* at 19.

However, Holmes has completely failed to allege a violation of his constitutional rights by the CheckPoint Defendants, or by any of the other defendants. It appears that the extent of the CheckPoint Defendants' role was to monitor the usage of their own computer and to report a theft to the police. As discussed above, the complaint itself belies any allegations that CheckPoint knew such a report to be false. Even if the Court were to accept Holmes's conspiracy allegations—which it does not—the Court's previous factual finding that Holmes's computer and the computer ultimately recovered by the NYPD were not one and the same precludes any possible Fourth or Fifth Amendment violation. There has been no colorable constitutional deprivation, then, to warrant a cause of action under § 1983.

Holmes's claims under §§ 1985(3) and 1986 are also inherently implausible. To state a valid cause of action under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws . . . (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's

> person or property, or a deprivation of a right or privilege of a citizen of the United States.

*Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir. 1988) (citations omitted).  In order to prove liability pursuant to § 1985(3), the conspirators must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Holmes's cause of action under 42 U.S.C. § 1985(3) fails on this last basis alone, as he has made absolutely no allegations that any of the defendants' actions were motivated by racial or class-based animus.  *See Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II*, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006) (granting 12(b)(6) motion to dismiss because plaintiffs failed to "sufficiently allege racial or otherwise class-based, invidious discrimination behind defendants' alleged conduct").

Finally, because Holmes's § 1985 claim against the CheckPoint Defendants fails, his § 1986 claim must fail as well.  Section 1986 provides, in relevant part, that

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .

It does not provide any substantive rights, but rather is "predicated on a valid § 1985 claim."  *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2001) (internal quotation marks and citation omitted).

***

Holmes has provided the Court with no reason to revisit its previous jurisdictional holding; nor has he pleaded any other colorable, cognizable tort on which to hang

personal jurisdiction. The Court therefore grants CheckPoint's motion to dismiss in its entirety.[16]

### b. *Kenner Defendants*

Similarly, this Court does not have personal jurisdiction over the Kenner Defendants. C.P.L.R. § 301 does not apply because Holmes has not alleged that the Kenner Defendants have any physical presence in New York, let alone any agents, officers, directors, or employees here. C.P.L.R. § 302(a) does not apply because there are no allegations that the Kenner Defendants conduct business within the state; nor has Holmes properly alleged any tort against them. Holmes's only allegation against the Kenner Defendants is that they took a "false" police report in Louisiana. There are no plausible allegations that the Kenner Defendants knew or should have known that the police report was false or that any tortious act was committed. The Court therefore finds no basis for the application of C.P.L.R. § 302(a) and grants the Kenner Defendants' motion to dismiss.[17]

### 3. *Claims Against the FedEx Defendants*

Holmes alleges computer fraud in violation of 18 U.S.C. § 1030 by FedEx, as well as civil rights violations pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986 by FedEx

---

[16] Even if the Court were to have personal jurisdiction, which it does not, these claims would also fail for failure to state a claim under Rule 12(b)(6). As to the false reporting claim, Holmes has pled absolutely no set of facts to support his contention that CheckPoint acted intentionally; likewise he has provided no facts at all to plead invasion of privacy; and there is nothing from which to infer that CheckPoint's behavior was "outrageous," as required to state an intentional infliction of emotional distress claim, *see Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir. 1996). As to conversion, even if the laptops were one and the same, Holmes makes no showing that he still had a property interest in the computer after giving it to his estranged wife, especially as he did not even know where she was keeping the computer, *see Holmes I,* 2018 WL 3542856, at *2. As to identity theft and computer fraud, neither claim is pled with the specifity required by Rule 9(b), *see Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004). Indeed, Holmes makes zero attempt to connect the alleged log-in attempt to CheckPoint at all. Finally, as for the alleged civil rights violations, even if Holmes had pled a constitutional violation, he has wholly failed to plausibly plead that the CheckPoint Defendants were state actors, *see Betts v. Shearman,* 751 F.3d 78, 84–85 (2d Cir. 2014), that they exerted any improper influence or control over the NYPD, *see Fisk v. Letterman,* 401 F. Supp. 2d 362, 367–68 (S.D.N.Y. 2005), or that there was any agreement in furtherance of a conspiracy among the supposed actors, *see Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997).

[17] Holmes's civil rights claims against the Kenner Defendants also fail because Holmes has wholly failed to plausibly allege that the Kenner Defendants committed any constitutional violation or that they conspired to do so.

and its employee, Meyer.  The computer fraud allegations against FedEx fail for the same reasons they fail against CheckPoint:  they are time-barred.  According to Holmes's complaint, any involvement by FedEx occurred at the latest in or around August 2016.  Doc. 87 at 5–6.  However, this action was not filed until February 2019, well past the two-year statute of limitations for computer fraud.  *See* 18 U.S.C. § 1030(g).  Holmes's claims for civil rights violations also fail for the same reasons as the claims against CheckPoint.  The FedEx Defendants' role in this ordeal was even more minimal than that of CheckPoint.  It appears that the extent of their involvement was reporting a theft to the police.

> [A] private party who calls police officers for assistance or provides them with information that may lead to an arrest of an individual does not become a state actor rendering that party liable under § 1983 to the person detained, unless the police officers were improperly influenced or controlled by the private party.

*Fisk*, 401 F. Supp. 2d at 367 (S.D.N.Y. 2005).  Nothing in the complaint suggests that FedEx or Meyer influenced the investigation, or controlled police actions in any way.  Holmes has therefore failed to properly allege that FedEx and Meyer were acting under color of state law, so as to be subject to a § 1983 claim.  Any §§ 1985(3) and 1986 claims against the FedEx Defendants also fail because, as explained above, Holmes has failed to allege any racial or class-based animus, as required to state a cause of action under these statutes.  All claims against the FedEx Defendants are therefore dismissed.

### 4.  *Claims Against the City Defendants*

Finally, Holmes brings claims for wrongful conversion against the NYPD; for deprivation of property without due process against the NYPD; for violations of civil rights against the NYPD and Caballero pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986; for failure to train against all City Defendants; and for attorney's fees against the NYPD and Caballero.

As an initial matter, Holmes's claims for conversion and for civil rights violations pursuant to §§ 1985(3) and 1986 fail for the reasons already stated, and the NYPD must

be dismissed.  Namely, his claim for conversion fails because, as the Court found in *Holmes I*, Holmes has failed to establish that the computer ultimately retrieved by the NYPD was, in fact, his property.[18]  His claims under §§ 1985(3) and 1986 fail because he has failed to allege any racial or class-based motivation behind the supposed civil rights violations, to the extent there were any.  Moreover, the NYPD is a non-suable entity and must be dismissed from this action.  *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").  Because of Holmes's *pro se* status, however, the Court will liberally construe his claims against the NYPD to be against the City.  Finally, Holmes is not entitled to attorney's fees, as he is proceeding *pro se*.  *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

The remainder of Holmes's claims are best interpreted as § 1983 claims against the City Defendants for violations of the Fourth and Fifth Amendment, as applicable to the states through the Fourteenth Amendment.[19]  These claims are rooted in four alleged events:  (1) Caballero's harassment of Holmes while he was trying to obtain the computer; (2) the taking of the computer; (3) Ming's failure to supervise Caballero; and (4) the existing conspiracy among all defendants to deprive Holmes of his constitutional

---

[18] Additionally, any such claim against the City would be time-barred.  Under New York General Municipal Law § 50-i(1), Holmes was required to commence his claim against City Defendants within one year and ninety days.  According to Holmes's complaint, the City Defendants' misconduct occurred, at the latest, in September or October 2016.  However, Holmes did not file suit until February 2019, well after the statute of limitations had expired.

[19] To the extent claims are against the City, a municipality cannot be held liable under § 1983 solely on a theory of *respondeat superior.  Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978).  A § 1983 claim can only be brought against a municipality if the action that is alleged to be unconstitutional was the result of an official policy or custom.  *Id.* at 690–91.  Thus, a plaintiff must allege that such a municipal policy or custom is responsible for his injury.  *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)).

rights.  None of these actions rises to the level of a constitutional violation, as required by § 1983.

### a.  Harassment

Holmes alleges that Caballero went to his home in September 2016; that, upon not finding him there, Caballero proceeded to ask his neighbors where he might be; that Caballero called plaintiff to alert him he was in possession of a stolen computer and threatened to arrest him if the computer was not surrendered; and that he then e-mailed his attorney, Garfin, indicating his intent to proceed with such an arrest.  Doc. 87 at 6–8. Additionally, Holmes alleges that "NYPD called, threatened, and intimidated the Plaintiff everyday [*sic*] through September and early October 2016, telling him he would go to jail for many years if he did not surrender his alleged 'brand new,' innocently-purchased Apple computer."  *Id.* at 7.

These actions do not plausibly give rise to a Fourth Amendment violation.  The Fourth Amendment protects against unreasonable searches and seizures.  There are no allegations that Holmes was searched; nor are there allegations that he was seized.  Even if Holmes's claim is construed as one for malicious prosecution, a plaintiff asserting such a claim under § 1983 must "show some deprivation of liberty consistent with the concept of seizure." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation marks and citation omitted).  Holmes has not pled that there were any restraints put on his liberty.  Moreover, to the extent any Fourth Amendment claim were properly pled, it would still fail because, according to Holmes's own complaint, Caballero's actions were not unreasonable.  To determine reasonableness, courts look to "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 20 (1968).  Here, Caballero received a report about a potentially stolen computer, as well as credible information that Holmes was in possession of the computer.  He proceeded to contact Holmes to try to recover the computer—and was ultimately

successful. Doc. 87 at 5–8. None of this can be construed as unreasonable, especially in light of the Court's finding in *Holmes I* that the computer ultimately retrieved by the NYPD was not the same computer Holmes had ordered from Amazon.

Nor does Caballero's alleged harassment rise to the level of a substantive or procedural due process violation. "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). Caballero's conduct cannot plausibly meet this standard. *See, e.g.*, *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 361 (S.D.N.Y. 2007) ("Although the officers allegedly yelled at and threatened plaintiff, banged on doors and windows and, on one occasion, forcibly entered her home without consent or a warrant, they never arrested her, physically touched her or coerced her to leave her home. . . . [T]he officers' actions here do not rise to the level of a substantive due process violation.").

Because Holmes has not established that any alleged harassment rises to the level of a constitutional violation, as required by § 1983, it follows that any claims against the City stemming from these allegations necessarily fail as well. *Picott v. Chatmon*, No. 12 Civ. 7202 (ER), 2017 WL 4159900, at *9 (S.D.N.Y. Sept. 18, 2017) ("A *Monell* claim cannot lie absent an underlying constitutional violation." (citing *Bolden v. Cty. of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013))).

*b. Taking the Computer*

Holmes also alleges that his civil rights were violated when Caballero "seized the computer without compensating plaintiff or his wife, and made the computer with his personal information others unknown [*sic*] to plaintiff in violation of Federal law." Doc. 87 at 19–20.

These allegations cannot give rise to a Fourth Amendment claim. As an initial matter, the Court's findings in *Holmes I* preclude any conclusion that the computer was actually seized. *See Holmes I*, 2018 WL 3542856, at *2 ("After meeting with Caballero,

Scott agreed to accompany the group to her storage unit. Scott *turned over* the laptop on October 4, 2016 at 7:30 p.m." (internal citations omitted) (emphasis added)). Moreover, as the Court has determined with regards to Holmes's conversion claim, Holmes did not have a possessory interest in the computer. And, finally, to the extent such a seizure did occur, it was supported by ample probable cause. "Probable cause for seizure of property exists when the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." *United States v. Okparaeka*, No. 17 Crim. 225 (NSR), 2018 WL 3323822, at *5 (internal quotation marks and citations omitted). Holmes alleges that the NYPD based its investigation "on the police report filed August 8, 2016, at the request of Rusty Mahony, an employee of CheckPoint, by Kenneth A. Meyer . . . , an employee of FedEx Corporation, who resided in Kenner, Louisiana." Doc. 87 at 6. That police report, wherein CheckPoint is said to have ample evidence that its computer was with an unintended user, provides probable cause for retrieving the computer. Doc. 87, Ex. 1. And as the Court noted in *Holmes I*, the retrieved computer was still branded with CheckPoint's sticker. *Holmes I*, 2018 WL 3542856 at *14. Holmes's allegations, then, do not suggest that Caballero or the NYPD acted unlawfully in recouping the computer.

Holmes further alleges that he was "deprived of property without due process of law when [Officer Caballero] . . . ordered [him] to return the said computer that he had lawfully purchased" on threat of four years in prison. Doc. 87 at 17.

> The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest.

*Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995). "[W]here a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, the Due Process Clause is satisfied if the state

provides an adequate postdeprivation remedy." *Marvin v. Jennings*, 19 Civ. 11603 (CM), 2020 WL 353282, at *2 (S.D.N.Y. Jan. 17, 2020). Even if Holmes did have a possessory interest in the computer—which the Court has established that he does not—his allegations fail to suggest that Caballero was acting pursuant to established state procedures. Because this is the case, Holmes's claim for deprivation of property cannot survive if adequate post-deprivation remedies were available to him. Here, common law causes of action for negligence, conversion, and replevin were available to Holmes as a means to recover any property that may have been lost, and, therefore, his claim must fail. *See Ochoa v. Bratton*, No. 16 Civ. 2852 (JGK), 2017 WL 5900552, at *5 (S.D.N.Y. Nov. 28, 2017) (collecting cases).

Holmes has therefore failed to establish that taking the computer amounted to a constitutional violation, and his claims against Caballero and the City based on these allegations must fail. *See Picott*, 2017 WL 4159900, at *9.

### c. Failure to Train

Holmes also brings claims for failure to train against the NYPD, the City, Caballero, and Ming. He alleges that the "NYPD and New York wantonly violated all [his] due process and civil rights . . . by repeatedly threatening him with prison and forcing him to spend his own money on lawyers and private investigators as NYPD acted as the private security force for FedEx and Checkpoint." Doc. 87 at 21. Holmes maintains that "NYPD allowed all of this behavior to happen, with the direct supervisor of this operation, Ming, doing nothing to stop it." *Id.*

Inadequate employee training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In *Walker v. City of New York*, the Second Circuit articulated three requirements that plaintiffs need to meet to show that a municipality's failure to train or supervise constitutes a deliberate indifference to their constitutional rights: (1) the policymakers

foresaw the situation, (2) the situation would present the employee "with a difficult choice of the sort that training or supervision [would] make less difficult or . . . there is a history of employees mishandling the situation," and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." 974 F.2d 293, 297–98 (2d Cir. 1992).

Holmes's complaint alleges none of these requirements. Though Holmes states that "New York and NYPD have a long-established policy and custom of denying citizen's rights protected by the Constitution," and references New York's stop-and-frisk policy, Doc. 87 at 21, he does nothing to connect that policy with the purported abuses he complains of. There is also nothing to indicate that Caballero was faced with a difficult choice, having received a credible report from the police in Kenner, or that his actions constituted any constitutional deprivations; nor is there anything to indicate that Holmes's situation would have been foreseeable to anyone, let alone the City.

To the extent Holmes's claim against Ming is construed as one for failure to intervene, such a claim must also fail. "If the Court determines that the officer's conduct did not violate a constitutional right"—as is the case here—"the [failure to intervene] analysis ends." *Feinberg v. City of New York*, No. 99 Civ. 12127 (RC), 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004).

Holmes's claim for failure to train, as the rest of his claims against the City Defendants[20] must therefore also be dismissed.

---

[20] Even if Holmes had succeeded in establishing a claim against Caballero or Ming, it would fail because Caballero and Ming are entitled to qualified immunity. The qualified immunity inquiry asks: "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (internal quotation marks and citation omitted). Even if Holmes could make out a clearly established violation—which he cannot—it was undoubtedly objectively reasonable for Caballero and Ming to believe that responding to credible reports of a missing computer did not violate any clearly established law.

*d.  Conspiracy*

Finally, any allegations of a conspiracy between defendants are wholly insufficient and have no factual backing.  "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."  *Boddie*, 105 F.3d at 862 (internal quotation marks and citation omitted).  Holmes fails to offer "a single fact to corroborate [his] allegation of a 'meeting of the minds' among the conspirators."  *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011); *see also Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (laying out elements of a § 1983 conspiracy).  Therefore, Holmes's conspiracy claims must fail.

***

For the foregoing reasons, the Court finds that Holmes's complaint fails as to all claims.  The Court grants all defendants' motions to dismiss in full and with prejudice.  *See Larkem v. Dep't of Educ., City of New York*, No. 17 Civ. 7017 (ER), 2018 WL 1959555 (ER), at *6 ("Where defects are largely substantive and incurable, dismissal with prejudice is appropriate." (internal quotation marks and citation omitted)).

## III.  MOTION FOR SUMMARY JUDGMENT

Holmes moves for summary judgment against Apple, CheckPoint, and FedEx for intentional infliction of emotional distress; against Apple and Amazon for breach of contract; and against CheckPoint and the NYPD for conversion.  *See* Doc. 102 at 8–12.  Summary judgment is only appropriate where the materials in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986),

Having all been dismissed, there are no claims left in the Amended Complaint on which to grant summary judgment.  As to Holmes's position that he is entitled to

summary judgment against Amazon and FedEx for intentional infliction of emotional distress, this cannot be the case, as Holmes *withdrew* this claim as to these defendants in his Amended Complaint. *See Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 698 (S.D.N.Y. 2016) ("[A]n amended complaint replaces the [initial] [c]omplaint . . . in its entirety and therefore must include all of [a plaintiff's] claims and factual allegations against all [d]efendants against whom he wishes to proceed."). In any event, as discussed above, such claims would be time-barred. *Abdallah*, 2001 WL 262709, at *5. Summary judgment is therefore both unavailable and inappropriate.[21]

## IV.    MOTIONS FOR SANCTIONS

Apple, Amazon, and CheckPoint move for a variety of sanctions against Holmes, including attorney's fees and costs, as well as litigation restrictions. Docs. 72, 74, 79. For the reasons discussed below, these requests are denied.

### A. Attorney's Fees and Costs

The CheckPoint Defendants and Amazon both seek attorney's fees and costs. The CheckPoint Defendants make their application pursuant to both 42 U.S.C. § 1988(b) and Rule 11(c). Amazon looks to Rule 68. The Court considers each of these requests in turn.

#### 1.    42 U.S.C. § 1988(b)

"A Court may award reasonable attorney's fees to a prevailing party in an action brought under section 1983." *Jean-Louis v. City of New York*, 342 F. Supp. 3d 436, 441 (S.D.N.Y. 2018) (citing 42 U.S.C. § 1988(b)). Defendants may be awarded attorney's fees only "upon a finding that the plaintiff's action was *frivolous, unreasonable, or without foundation*, even though not [necessarily] brought in subjective bad faith." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014) (internal quotation marks and citation omitted). This is a stringent standard, meant "to avoid chilling the initiation and prosecution of meritorious civil rights actions." *LeBlanc-Sternberg v.*

---

[21] Holmes references defendants' motions for summary judgment in one of his opposition papers. *See* Doc. 102 at 5–7. The Court notes that no such motions are pending.

*Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998). The CheckPoint Defendants are, undoubtedly the prevailing party in this litigation. Regardless, the Court is not inclined to impose attorney's fees. *Pro se* plaintiffs are afforded a liberal construction of their filings. Holmes's claims and allegations, though ultimately dismissed, were not so outlandish or frivolous as to warrant this remedy, particularly in light of his *pro se* status.

    *2. Rule 11*

    Rule 11 sanctions are permitted against litigants whose purpose is to "harass, cause unnecessary delay, or needlessly increase the cost of litigation"; whose "claims, defenses, and other legal contentions," are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; whose "factual contentions [lack] evidentiary support" or are unlikely to have "evidentiary support after a reasonable opportunity for further investigation or discovery"; and whose "denials of factual contentions are [not] warranted on the evidence or . . . are [not] reasonably based on belief or a lack of information." Rule 11(b)(1)–(4). "[A]fter notice and a reasonable opportunity to respond," Rule 11(c)(1), any such sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," Rule 11(c)(4). "[I]f imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* "The standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir 2009) (internal quotation marks and citation omitted).

    Such sanctions may be imposed on *pro se* plaintiffs. *Id.* In determining whether to impose Rule 11 sanctions, "the court may consider the special circumstances of litigants who are untutored in the law." *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989). In this case, there is nothing in the record to indicate that Holmes has any particular competence in "finding and understanding the applicable law." *Smith v. Educ.*

*People, Inc.*, 233 F.R.D. 137, 142 (S.D.N.Y. 2005). Indeed, his briefing suggests just the opposite. Though a close call, the Court therefore declines to impose such sanctions at this time.

### 3. Rule 68

Rule 68 provides in relevant part that:

> [A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. . . . If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68(a), (d). "Rule 68 is a cost-shifting rule designed to encourage settlements without the burdens of additional litigation." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 229 (2d Cir. 2006). The Rule "applies only to offers made by the defendant and only to judgments obtained by the plaintiff." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). It is inapplicable when the defendant obtains judgment. *Id.*

In *Holmes I*, Amazon extended an offer of judgment to Holmes in the amount that he paid for the computer, $2,351.12. 17 Civ. 4557, Doc. 93, Ex. 1. Holmes declined the offer. *Id.* Ex. 2. However, the Court entered judgment in favor of Holmes, against Amazon, at Amazon's request in the amount of $2,351. *Id.*, Doc. 122. To the Court's knowledge, the money was deposited with the Clerk of Court and there remains. *Id.*, Doc. 93, Ex. 3. Amazon now seeks both its attorney's fees and costs in the instant action pursuant to the Rule 68 judgment entered in *Holmes I*. The Court denies Amazon's petition.

Amazon argues that attorney's fees are within the scope of Rule 68's "costs" because "Holmes has asserted a claim under 42 U.S.C. §§ 1983, 1985 and 1986, which specifically provide for an award of attorney's fees." Doc. 74 at 12. For support, it points to the Court's decision in *Marek v. Chesny*, which held that,

> [T]he term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority. In other words, all costs properly awardable in an action are to be considered within the scope of Rule 68 'costs.' Thus, absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68.

473 U.S. 1, 9 (1985). However, the Second Circuit has expressly rejected this reading of *Marek*, stressing the *Marek* Court's use of the qualifying phrase "properly awardable." *Stanczyk v. City of New York*, 752 F.3d 273, 282 (2d Cir. 2014). As the Second Circuit instructs,

> Because a civil rights defendant can recover attorney's fees only when the plaintiff's claims are 'vexatious, frivolous, or brought to harass or embarrass,' and a prevailing plaintiff by virtue of her victory exceeds this standard, we cannot conceive of a situation in which attorney's fees could be properly awardable to a non-prevailing defendant under Rule 68 in a civil rights action.

*Id* (citations omitted). In other words, attorney's fees are only available to prevailing civil rights defendants when the claims are "vexatious, frivolous, or brought to harass or embarrass," as provided for in 42 U.S.C. § 1988. The rule in the Second Circuit cements this: "Rule 68, when applicable, requires a prevailing plaintiff to pay defendant's post-offer costs, *excluding attorney's fees*." *Id*. at 281 (emphasis added). The Court therefore declines to include Amazon's attorney's fees in any Rule 68 calculation of costs.

Indeed, the Court notes a tension between Amazon's application and its present status as a prevailing party. Amazon's appeal to Rule 68 is based on a judgment entered in *Holmes I* against Amazon and in favor of Holmes. *See* Doc. 96 at 3. In that dispute Amazon did not, by definition, prevail on its claim. This is, of course, in stark contrast to Amazon's position in the instant case, where it has undoubtedly joined the ranks of Apple and CheckPoint as a prevailing party. Amazon has provided no case law for the proposition that it can recover costs in this case on the basis of a Rule 68 offer of judgment extended and ultimately entered in a previous, though related case. Unlike in

*Holmes I*, Amazon is the prevailing party in this case and judgment will be entered in its favor.  Rule 68 is therefore inapplicable.  *Delta Air Lines*, 450 U.S. at 352.[22]

### B.  Litigation Restriction

Apple and CheckPoint request that Holmes be restricted from filing suits *pro se* against them without prior court approval.  "Under the All Writs Act, 28 U.S.C. § 1651, a district court may sanction a prolific litigant who abuses the judicial process by repeatedly suing defendants on meritless grounds and enjoin him from pursuing future litigation without leave of the court."  *Davey v. Dolan*, 453 F. Supp. 2d 749, 755 (S.D.N.Y. 2006).  The Second Circuit has instructed courts to consider five factors when determining whether such sanctions are appropriate:

> (1) [T]he litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. US Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).  The ultimate question is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties."  *Id.*

As to the first factor, this is only Holmes's second related lawsuit.  Though the Court agrees that this lawsuit is duplicative of *Holmes I*, it does not agree that Holmes's behavior is sufficiently egregious as to warrant a litigation restriction.  As to the second factor, Holmes himself has stated that he filed *Holmes I* "to get answers."  Doc. 87 at 8.  Presumably this is also why he has filed the instant suit.  Lawsuits are not fishing expeditions.  However, the Court does not doubt that Holmes has proceeded in good faith; he raised various new arguments against defendants, including arguments as to why

---

[22] The Court notes that Amazon has already filed a motion for attorney's fees and costs in *Holmes I*, which is the appropriate vehicle for such a request.  17 Civ. 4557, Doc. 131.

res judicata should not apply.  Third, Holmes is proceeding *pro se*, which counsels in his favor in the instant action.  Though defendants note that Holmes has previously been assisted by counsel, the Court sees no reason to doubt Holmes's *pro se* status.  The fourth factor weighs in favor of Apple and the CheckPoint Defendants; Holmes has undoubtedly caused needless expense to defendants and to the Court, especially because he chose to proceed with this lawsuit while appeal was pending in *Holmes I*.  The fifth factor also weighs in favor of Apple and the CheckPoint Defendants, as the Court has declined to impose monetary sanctions on Holmes.

On balance, however, the Court finds that a litigation restriction is not warranted at this time.

*** 

As discussed above, the Court has declined to impose sanctions on Holmes, either monetary or otherwise.  However, Holmes should not misconstrue the Court's leniency.  Though sanctions were found to be inappropriate here, they very well may be the Court's only recourse in future litigation stemming from these same facts against these same defendants, especially for claims that already were or that easily could have been brought in the two actions he has filed.  Given the number of defendants haled to Court and the number of claims raised without any success, the Court can only hope that, in light of its decision here, Holmes will put this matter to rest.

## V.    CONCLUSION

For the foregoing reasons, all of Holmes's claims are dismissed with prejudice; his motion for summary judgment is denied; and defendants' applications for monetary and other sanctions are denied.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 55, 66, 68, 71, 73, 75, 80, and 99, and to close the case.

SO ORDERED.

Dated:    February 26, 2020
      New York, New York

EDGARDO RAMOS, U.S.D.J.